IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THEA L. CIPRA-VALIGA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO HOME MORTGAGE,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED
March 12, 2008  TG
08cv1480
JUDGE ZAGEL
No. MAGISTRATE JUDGE ASHMAN
**JURY TRIAL DEMANDED**

## COMPLAINT

Now comes the plaintiff, THEA L. CIPRA-VALIGA ("Cipra-Valiga"), by her attorneys, DAVID A. BRYANT, MARK D. DEBOFSKY, VIOLET H. BOROWSKI, and DALEY DE BOFSKY & BRYANT, and complaining against the defendant, WELLS FARGO HOME MORTGAGE ("Wells Fargo"), she states:

### *Nature of Action*

1. This is a claim for discrimination in employment. Plaintiff alleges she was discriminated against in her employment by Wells Fargo on account of sex in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* Plaintiff seeks damages, inclusive of punitive damages pursuant to the Civil Rights Act of 1991, as well as recovery of her attorney's fees and costs.

### *Jurisdiction and Venue*

2. The court's jurisdiction derives from Title VII of the Civil Rights Act of 1964, as amended. Plaintiff has filed timely charges of discrimination with both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, which resulted in a notice of a right to sue (attached as Exhibit A and Exhibit B

respectively. Therefore, this court has jurisdiction over the subject matter of this claim in accordance with 42 U.S.C. § 2000e-5(f)(3). Jurisdiction is also founded upon 28 U.S.C. §§ 1331 and 1343(a)(4).

3. Defendant is located within this judicial district. Venue is therefore proper in this judicial district in accordance with 28 U.S.C. § 1291 and 28 U.S.C. § 1391(b).

### *The Parties*

4. The Plaintiff, THEA L. CIPRA-VALIGA ("Cipra-Valiga"), is a female. At all times relevant hereto, she was a resident of Valparaiso, Indiana. From February, 2000 until September 7, 2007, Mrs. Cipra-Valiga was employed by WELLS FARGO HOME MORTGAGE ("Wells Fargo") as a Branch Sales Manager of the LP Chicago office.

5. Defendant, Wells Fargo is a diversified financial services company providing banking, insurance, investments, mortgage and consumer finance in Illinois. At all times relevant hereto, Defendant has continuously been and is now doing business in the State of Illinois and has continuously had at least fifteen (15) employees. Therefore, at all times relevant hereto, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of section 701(b), (g) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(b), (g) and (h).

### *Facts*

6. On August 15th and 16th 2007, Mrs. Cipra-Valiga attended a Chicago Area Top Producers Company offsite in Geneva, Wisconsin.

7. On afternoon of August 15, 2007, the group took a boat tour around Lake Geneva, where alcohol was consumed.

8. On the evening of August 15, 2007, at the meeting house, approximately half of the group, including Richard Bechtel, Joyce Ciembrowski, Martha Vanbendegom, Rick Lapins, Neri Lugo, Jennifer Lewandowski, Ken Dickerson, Lane Sears, Rich Roller, and Troy Clemen, went downstairs of the meeting house to play cards and drink alcohol.

9. Mrs. Cipra-Valiga sat on a couch next to Joyce Ciembrowski, Mr. Bechtel's assistant, who was not playing cards. Mr. Bechtel was playing cards and was intoxicated. Mr. Bechtel threw a piece of ice by Mrs. Cipra-Valiga's head, which she picked up and threw back at Mr. Bechtel.

10. Subsequently, Mr. Bechtel approached Mrs. Cipra-Valiga and Ms. Ciembrowski and asked them "How are my two favorite ladies." After which Mr. Bechtel sat on top of Mrs. Cipra-Valiga. Mrs. Cipra-Valiga pushed him off stating, "Get off of me, you big lug." Mr. Bechtel proceeded to pretend box at Mrs. Cipra-Valiga stating, "I can take you."

11. Later, Mr. Bechtel asked Mrs. Cipra-Valiga to take a walk with him and motioned to the back door. Mrs. Cipra-Valiga looked at Ms. Ciembrowski and rolled her eyes. Then, she went over to Mr. Bechtel on the patio.

12. They discussed business and strategy for approximately one hour. Mr. Bechtel called her a "high maintenance, female employee."

13. At approximately 12:30 a.m. while still talking to Mrs. Cipra-Valiga, Mr. Bechtel began to walk toward a walking trail, which ran around the meeting house, and motioned for Mrs. Cipra-Valiga to join him.

14. During the walk, Mr. Bechtel continuously bumped his body into Mrs. Cipra-Valiga and poked her in the stomach making comments about how "tight [her] abs are."

15. Mrs. Cipra-Valiga began to feel uncomfortable so she walked faster while continuing to talk; however, Mr. Bechtel kept getting closer to her.

16. When Mr. Bechtel caught up to Mrs. Cipra-Valiga, he got behind her and pressed his body up against hers. He moved his hands under her arms and began moving his hands over her breasts and down below to her upper thigh area.

17. While doing so, Mr. Bechtel stated several times, in her right ear, "You have no idea how much I love you. I will take care of you. Kiss me."

18. Then, Mr. Bechtel moved his hands under her shirt and asked if she was wearing a bathing suit while proceeding to reach around to her back and untie her bathing suit strap.

19. This occurred very quickly and Mrs. Cipra-Valiga was in a state of disbelief and shock during these events. She grabbed her strap and stated, "What the f*** he thought he was doing." She then tied her swimsuit strap back up and stated to her supervisor, "I am not interested in this. No."

20. Mr. Bechtel responded, "Come here and kiss me just once, come on Thea."

21. Mrs. Cipra-Valiga replied, "I am not going to do this with you" and then continued to walk back toward the meeting house.

22. Mr. Bechtel repeatedly yelled, "No harm, no fowl." He walked after her, grabbed her arm, and again asked for a kiss.

4

23.     Mrs. Cipra-Valiga told him she was tired and going to bed. Then, she told him to have a good night.

24.     The evening of the 16th, Mr. Bechtel called Mrs. Cipra-Valiga's cellular phone and left a message. In the message, Mr. Bechtel stated that he missed her in the morning and hopes everything is okay at her branch.

25.     On August 20, 2007, Mrs. Cipra-Valiga contacted Employee Assisted Counseling and Maranda Jerkovic of Employee Relations, who stated that she would speak to Julie Miller of the Human Resources Department ("HR").

26.     On August 21, 2007, Julie Miller contacted her at home and told her that they would perform a formal investigation. Mrs. Cipra-Valiga stated that she was afraid of reporting to Mr. Bechtel during the investigation and Ms. Miller said she would make arrangements for her to report directly to Peter Jianette, the new Regional Manager, during the investigation.

27.     Mrs. Cipra-Valiga also stated that she did not want Jim Linnane involved because of his personal relationship with Mr. Bechtel and his prior inaction to complaints she had made involving Mr. Bechtel.

28.     On August 22, 2007, Mr. Jianette met with Mrs. Cipra-Valiga in the Lincoln Park office and asked her to tell him what happened and that he was sent to do the investigation.

29.     On August 28, 2007, Mrs. Cipra-Valiga informed Ms. Miller she did not feel comfortable working for or with Mr. Bechtel anymore due to the sexual harassment.

30.     On August 31, 2007, Ms. Miller informed Mrs. Cipra-Valiga that they completed the investigation into her sex harassment charge, and they had given

5

recommendations to Mr. Jianetti. Ms. Miller stated that they would likely continue to retain Mr. Bechtel and that she and Mr. Jianetti talked about transferring Mrs. Cipra-Valiga's branch to a different Area Manager in Illinois, Mike Axlerood. She indicated that Mr. Jianetti planned to meet with her on Tuesday, September 4, 2007, at 9:00 a.m. Ms. Miller asked Mrs. Cipra-Valiga to think about what they could do to retain her in the likely event that Mr. Bechtel stayed in his position.

31.　　On September 4, 2007, Mr. Jianetti met with Mrs. Cipra-Valiga in her office and told her, while pounding on his desk that, "Rick isn't going anywhere. He owns Chicago." He added, "you've caused me a lot of trouble." Then, he asked Mrs. Cipra-Valiga if she would consider leaving her branch and being transferred to the Indiana branch. Mrs. Cipra-Valiga informed him that she did not want to leave her branch. Mr. Jianetti also stated, "we have to keep Rick happy."

32.　　Mr. Jianetti mentioned transferring Mrs. Cipra-Valiga's branch to a different Area Manager in Illinois, Mike Axlerood. Then, he stopped and stated that he needed to discuss with Jim Linnane. He excused Mrs. Cipra-Valiga from her office and called Mr. Linnane.

33.　　After speaking with Mr. Linnane, he informed Mrs. Cipra-Valiga that the Company's resolution was that that they would not be transferring her and her branch to Mike Axlerood as discussed, but instead, she would still be reporting to Mr. Bechtel; however, communications would go through him.

34.　　During this conversation, Mr. Jianetti informed her that Mr. Bechtel would get the Rubloff joint venture account, which was an account that she received from Mr. Bechtel several years ago and built up, because he brought the account in. Following

6

their conversation, Mr. Jianetti spoke with Mr. Bechtel. Three hours later, he called Mrs. Cipra-Valiga and returned the account to her.

35. On September 6, 2007, Mrs. Cipra-Valiga called HR and asked why she would be reporting to Mr. Jianetti instead of Mr. Axlerood as they had discussed. Mrs. Cipra-Valiga stated that she would not continue to work for Mr. Bechtel or his area.

36. Ms. Miller admitted that Mrs. Cipra-Valiga was subjected to harassment, but stated that management was not required to transfer the branch to another area.

37. Because Wells Fargo's resolution to force her to continue to work to some degree with Mr. Bechtel was unacceptable and unreasonable, Mrs. Cipra-Valiga felt she had no other option but to resign.

38. On September 7, 2007, Mrs. Cipra-Valiga resigned as a result of constructive discharge based on Wells Fargo's refusal to transfer either Mr. Bechtel or Mrs. Cipra-Valiga and her branch to another area in Illinois.

39. One hour after she resigned, Todd Olson reassigned all Mrs. Cipra-Valiga's offices most lucrative builder accounts to a new hire, Jeff Lapka.

40. Mrs. Cipra-Valiga learned that Mr. Olson was planning to take away Mrs. Cipra-Valiga's offices most lucrative builder accounts even prior to her resignation.

41. On September 12, 2007, Mrs. Cipra-Valiga sent a letter to Julie Miller stating that she was under extreme emotional duress when she resigned and she would like to withdraw her resignation and asked for Short Term Disability ("STD") benefits and Family Medical Leave Act ("FMLA") claims forms.

42. On September 13, 2007, Mrs. Cipra-Valiga spoke with Mr. Jianetti on the phone and he advised her that he has accepted her resignation and that he has terminated

7

her in the system and does not understand why he would rescind at this time; therefore, she would not be eligible for STD or FMLA.

43. Anie Hovakimian also reported to human resources that Mr. Bechtel had sexually harassed her.

### COUNT I –SEX DISCRIMINATION/ SEX HARASSMENT

In support of Mrs. Cipra-Valiga's complaint for sex discrimination/ sex harassment against Wells Fargo, plaintiff states:

44. Plaintiff realleges paragraphs 1-43 of the General Allegations as paragraphs 1-43 of Count I of this complaint.

45. Plaintiff was subjected to unwelcome sexual harassment by her supervisor, Richard Bechtel. He touched her in an unwanted manner and exhibited inappropriate behavior in front of other employees at a company offsite.

46. The harassment was based on Plaintiff's sex, a female.

47. The harassment unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment.

48. Wells Fargo is liable. Richard Bechtel was Plaintiff's direct supervisor. Plaintiff informed human resources of the sexual harassment. The company resolution was unreasonable as Plaintiff would have to continue to work with her harasser, Mr. Bechtel, and he would still have some supervisory authority over her.

49. As a direct and proximate result of these actions, Plaintiff has suffered a loss in income and emotional distress.

50. In addition, Defendant's conduct was malicious and/or reckless in its disregard for plaintiff's civil rights.

WHEREFORE, plaintiff prays for the following relief:

    (a)    That the Court enter judgment in her favor and against Wells Fargo; and that the Court order Wells Fargo to reimburse Plaintiff for all back pay that she would have received but for the defendant's conduct;

    (b)    That the Court award Plaintiff prejudgment interest on any and all damages to which the Court finds that Plaintiff is entitled;

    (c)    That Defendant be ordered to take appropriate action to end harassment in the future if such an incident was to arise;

    (d)    That Defendant be ordered to pay to Plaintiff a reasonable sum that will compensate her for her emotional and economic injuries suffered as a result of Defendant's conduct;

    (e)    That Defendant be ordered to pay to Plaintiff punitive damages in the maximum sum allowable under the Civil Rights Act of 1991, and in an amount sufficient to compensate the plaintiff and to deter others from engaging in similar conduct;

    (f)    That Plaintiff receive such further relief as may be necessary to make Plaintiff whole, and in addition thereto that Plaintiff recover her costs and attorney's fees in accordance with 42 U.S.C. § 2000e-5(k).

## COUNT II – NON-COMPLIANCE WITH THE PERSONNEL RECORD REVIEW ACT, 820 ILCS 40/1 *et seq*.

44. Plaintiff realleges paragraphs 1-43 of the General Allegations as paragraphs 1-43 of Count II of this complaint.

45. This Court has jurisdiction pursuant to 820 ILCS 40/12 (c) because Plaintiff is employed in Illinois and the personnel record is maintained in Illinois.

46.     820 ILCS 40/2, explains:

Open Records. Every employer shall, upon an employee's request which the employer may require be in writing on a form supplied by the employer, permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action, except as provided in Section 10. The inspection right encompasses personnel documents in the possession of a person, corporation, partnership, or other association having a contractual agreement with the employer to keep or supply a personnel record. An employee may request all or any part of his or her records, except as provided in Section 10. The employer shall grant at least 2 inspection requests by an employee in a calendar year when requests are made at reasonable intervals, unless otherwise provided in a collective bargaining agreement. The employer shall provide the employee with the inspection opportunity within 7 working days after the employee makes the request or if the employer can reasonably show that such deadline cannot be met, the employer shall have an additional 7 days to comply. The inspection shall take place at a location reasonably near the employee's place of employment and during normal working hours. The employer may allow the inspection to take place at a time other than working hours or at a place other than where the records are maintained if that time or place would be more convenient for the employee. Nothing in this Act shall be construed as a requirement that an employee be permitted to remove any part of such personnel records or any part of such records from the place on the employer's premises where it is made available for inspection. Each employer shall retain the right to protect his records from loss, damage, or alteration to insure the integrity of the records. If an employee demonstrates that he or she is unable to review his or her personnel record at the employing unit, the employer shall, upon the employee's written request, mail a copy of the requested record to the employee. (Source: P.A. 83-1362.)

47.     Furthermore, 820 ILCS 40/3 provides:

Copies. After the review time provided in Section 2, an employee may obtain a copy of the information or part of the information contained in the employee's personnel record. An employer may charge a fee for providing a copy of such information. The fee shall be limited to the actual cost of duplicating the information. (Source: P.A. 83-1104.)

48. On October 10, 2007, Mrs. Cipra-Valiga, through counsel, requested a copy of her personnel file pursuant to 820 ILCS 40/1 *et seq.*, (copy of request attached as Exhibit C) and Wells Fargo refused.

49. On November 5, 2007, Mrs. Cipra-Valiga, through counsel, sent a letter to Wells Fargo again requesting a copy of her personnel file and enclosing an Authorization for Release and Copying of Employment Records. Wells Fargo again refused.

50. Thus, efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed.

WHEREFORE, plaintiff prays for the following relief:

(a) That the Court compel Wells Fargo to comply with 820 ILCS 40/1 *et seq*.

(b) That the Court award actual damages plus costs.

(c) That the Court award $200 plus costs, reasonable attorney's fees, and actual damages for a willful and knowing violation of this Act.

(d) That the Court award Plaintiff any and all other relief to which he may be entitled.

### *Jury Demand*

Plaintiff demands trial by jury.

Dated: Chicago, Illinois
　　　 March 12, 2008　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　　/s/ David A. Bryant
　　　　　　　　　　　　　　　　　　　　　　_____
Daley, DeBofsky & Bryant　　　　　　　　　　David A. Bryant
55 West Monroe Street, Suite 2440　　　　　　Attorney for Plaintiff
Chicago, Illinois 60603
(312) 372-5200
(312) 372-2778 (fax)

11

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA  [X] EEOC | 440-2008-00153 |

**Illinois Department Of Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Thea L. Cipra-Valiga | (219) 531-2974 | 10-31-1970 |

Street Address: 2102 Emmett Court, Valparaiso, IN 46385

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| WELLS FARGO HOME MORTGAGE | 500 or More | |

Street Address: 2742 North Lincoln, Chicago, IL 60614

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 03-13-2007  Latest: 09-07-2007

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the above named Respondent in February 2000 as a Branch Sales Manager. During my tenure, I was subjected to sexual harassment. I reported it to Respondent. Subsequently, I was constructively discharged.

I believe that I was discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

March 12, 2008  TG
08cv1480
JUDGE ZAGEL
MAGISTRATE JUDGE ASHMAN

OCT 15 2007

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

10/11/07 — Date / Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

EEOC Form 161-B (3/98)           **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Thea L. Cipra-Valiga<br>2102 Emmett Court<br>Valparaiso, IN 46385 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

**CERTIFIED MAIL #7000 0600 0022 1012 6504**

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL *(29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2008-00153 | Ernestine Harris,<br>Enforcement Supervisor | (312) 886-7490 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)    *(signature)* John P. Rowe,    12/20/07
                  **District Director**           (Date Mailed)

cc:     **WELLS FARGO HOME MORTGAGE**

```
                              March 12, 2008   TG
                              08cv1480
                              JUDGE ZAGEL
                              MAGISTRATE JUDGE ASHMAN
```

March 12, 2008   TG
08cv1480
JUDGE ZAGEL
MAGISTRATE JUDGE ASHMAN

LAW OFFICES

# Daley, DeBofsky & Bryant

55 West Monroe Street
Suite 2440
Chicago, Illinois 60603

VOICE (312) 372-5200
FAX   (312) 372-2778
WEB   ddbchicago.com

Frederick J. Daley, Jr.
Mark D. DeBofsky
David A. Bryant
Marcie E. Goldbloom
James R. Comerford
Violet H. Borowski
Barbara H. Borowski
Gregory A. Benker
Sandra Dye

Of Counsel
Heather F. Aloe

**Via Certified Mail**

October 10, 2007

Attn: Julie White, Human Resources Department
Wells Fargo & Company
625 Marquete Ave.
Minneapolis, MN 55479

Re:   Thea L. Cipra-Valiga
      Employee ID 409922

Dear Ms. White:

We represent Mrs. Cipra-Valiga and request a copy of her personnel file pursuant to 820 ILCS 40/1 *et seq.* (see enclosed Authorization for Release and Copying of Employment Records). As explained in the authorization form, please fulfill this request within 7 days of receipt.

If you require any additional information, please contact me as soon as possible via email at dabryant@ddbchicago.com or telephone (312) 372-5200.

Sincerely,

David A. Bryant

DAB/jd

cc:   Thea L. Cipra-Valiga

AUTHORIZATION FOR RELEASE AND
COPYING OF EMPLOYMENT RECORDS

TO:   Wells-Fargo

YOU ARE HEREBY AUTHORIZED AND REQUESTED to release to my attorneys, DALEY, DE BOFSKY & BRYANT, 55 West Monroe Street Suite 2440, Chicago, Illinois 60603, or any copying service acting pursuant to this authorization, any and all employment records, including applications, performance evaluations, disciplinary records, notes, memoranda, or other documents relating to employment, and benefits incident thereto, which you have in your possession. This request is made in accordance with 820 ILCS 40/1 *et seq.*, and in accordance with said statute, you must produce copies of the requested records within seven days of receipt of this request. Any fees incurred in processing this request are limited by statute to the cost of duplicating the information.

The undersigned releases you or anyone working on your behalf from any privilege, right, or liability which you may have in said records.

This authorization shall remain in effect from the date below until revoked.

A copy of this authorization may serve in lieu of an original.

Thea Lee Cipra-Valiga

SSN: 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

Dated: 9/18/07

Date of Birth: 10/31/1970