IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEA L. CIPRA-VALIGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.   08 CV 1480 |
| v. | ) |
| | ) |
| WELLS FARGO HOME MORTGAGE, | ) Judge James B. Zagel |
| | ) |
| Defendant. | ) |

### DEFENDANT WELLS FARGO HOME MORTGAGE'S
### ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Wells Fargo Home Mortgage ("Wells Fargo" or the "Company"), by its counsel, hereby responds to Plaintiff, Thea L. Cipra-Valiga's ("Cipra-Valiga's" or "Plaintiff's") Complaint as follows:

### Nature of Action

**Paragraph 1:** This is a claim for discrimination in employment. Plaintiff alleges she was discriminated against in her employment by Wells Fargo on account of sex in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*. Plaintiff seeks damages, inclusive of punitive damages pursuant to the Civil Rights Act of 1991, as well as recovery of her attorney's fees and costs.

**Answer to Paragraph 1:** Wells Fargo admits that Plaintiff has filed a complaint and seeks monetary damages against Wells Fargo under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*. ("Title VII")  Wells Fargo further admits that Plaintiff's complaint alleges that the Company discriminated against her on the basis of her gender.  Wells Fargo denies all remaining allegations as stated in this Paragraph of the Complaint including, without limitation, that it discriminated against Plaintiff in violation of Title VII.

### Jurisdiction and Venue

**Paragraph 2:** The court's jurisdiction derives from Title VII of the Civil Rights Act of 1964, as amended. Plaintiff has filed timely charges of discrimination with both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, which resulted in a notice of a right to sue (attached as Exhibit A and Exhibit B respectively). Therefore, this court has jurisdiction over the subject matter of this claim in accordance with 42 U.S.C. § 2000e-5(f)(3). Jurisdiction is also founded upon 28 U.S.C. §§ 1331 and 1343(a)(4).

**Answer to Paragraph 2:** Wells Fargo admits that (i) the Court has jurisdiction of this matter; and (ii) the documents attached to the Complaint as Exhibits A and B indicate that Plaintiff timely filed charges of discrimination with the Equal Opportunity Commission and the Illinois Department of Human Rights and that a notice of right to sue was issued. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 3:** Defendant is located within this judicial district. Venue is therefore proper in this judicial district in accordance with 28 U.S.C. § 1291 and 28 U.S.C. § 1391(b).

**Answer to Paragraph 3:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

### The Parties

**Paragraph 4:** The Plaintiff, THEA L. CIPRA-VALIGA ("Cipra-Valiga"), is a female. At all times relevant hereto, she was a resident of Valparaiso, Indiana. From February, 2000 until September 7, 2007, Mrs. Cipra-Valiga was employed by WELLS FARGO HOME MORTGAGE ("Wells Fargo") as a Branch Sales Manager of the LP Chicago office.

**Answer to Paragraph 4:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 5:** Defendant, Wells Fargo is a diversified financial services company providing banking, insurance, investments, mortgage and consumer finance in Illinois. At all times relevant hereto, Defendant has continuously been and is now doing business in the State of Illinois and has continuously had at least fifteen (15) employees. Therefore, at all times relevant hereto, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of section 701(b), (g) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(b), (g) and (h).

**Answer to Paragraph 5:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

### Facts

**Paragraph 6:** On August 15th and 16th 2007, Mrs. Cipra-Valiga attended a Chicago Area Top Producers Company offsite in Geneva, Wisconsin.

**Answer to Paragraph 6:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 7:** On afternoon of August 15, 2007, the group took a boat tour around Lake Geneva, where alcohol was consumed.

**Answer to Paragraph 7:** Wells Fargo admits that certain Wells Fargo employees took a group boat tour around Lake Geneva in the afternoon of August 15, 2007. Wells Fargo also admits that certain Wells Fargo employees consumed alcohol either before or during the boat tour. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 8:** On the evening of August 15, 2007, at the meeting house, approximately half of the group, including Richard Bechtel, Joyce Ciembrowski, Martha Vanbendegom, Rick Lapins, Neri Lugo, Jennifer Lewandowski, Ken Dickerson, Lane Sears, Rich Roller, and Troy Clemen, went downstairs of the meeting house to play cards and drink alcohol.

3

**Answer to Paragraph 8:** Wells Fargo admits that in the evening of August 15, 2007, employees Richard Bechtel, Joyce Ciembrowski, Martha Vanbendegom, Rick Lapins, Neri Lugo, Jennifer Lewandowski, Ken Dickerson, Lane Sears, Rich Roller, and Troy Clemen voluntarily assembled at the meeting house after the conclusion of all Wells Fargo business meetings. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 9:** Mrs. Cipra-Valiga sat on a couch next to Joyce Ciembrowski, Mr. Bechtel's assistant, who was not playing cards. Mr. Bechtel was playing cards and was intoxicated. Mr. Bechtel threw a piece of ice by Mrs. Cipra-Valiga's head, which she picked up and threw back at Mr. Bechtel.

**Answer to Paragraph 9:** Wells Fargo admits that (i) at some point during the evening of August 15, 2007, Mrs. Cipra-Valiga sat on a couch next to Joyce Ciembrowski; (ii) Ms. Ciembrowski was not playing cards at the time; and (iii) Mr. Bechtel threw a piece of ice by Mrs. Cipra-Valiga's head, which she picked up and threw back at Mr. Bechtel. Wells Fargo admits that Mr. Bechtel was playing cards but denies that he was intoxicated. Answering further, Wells Fargo states that Mr. Bechtel threw the ice toward Ms. Cipra-Valiga as a joke with no malicious intent and that Mrs. Cipra-Valiga understood the incident as such at the time and responded to Mr. Bechtel in a similar manner. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 10:** Subsequently, Mr. Bechtel approached Mrs. Cipra-Valiga and Ms. Ciembrowski and asked them "How are my two favorite ladies." After which Mr. Bechtel sat on top of Mrs. Cipra-Valiga. Mrs. Cipra-Valiga pushed him off stating, "Get off of me, you big lug." Mr. Bechtel proceeded to pretend box at Mrs. Cipra-Valiga stating, "I can take you."

4

**Answer to Paragraph 10:**    Wells Fargo admits that Mr. Bechtel spoke with Mrs. Cipra-Valiga and Ms. Ciembrowski at various times during the gathering at the meeting house on August 15, 2007.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 11:**    Later, Mr. Bechtel asked Mrs. Cipra-Valiga to take a walk with him and motioned to the back door.  Mrs. Cipra-Valiga looked at Ms. Ciembrowski and rolled her eyes.  Then, she went over to Mr. Bechtel on the patio.

**Answer to Paragraph 11:**    Wells Fargo admits that Mr. Bechtel and Mrs. Cipra-Valiga took a walk at some point during the evening of August 15, 2007.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 12:**    They discussed business and strategy for approximately one hour.  Mr. Bechtel called her a "high maintenance, female employee."

**Answer to Paragraph 12:**    Wells Fargo admits that Mrs. Cipra-Valiga and Mr. Bechtel discussed business and strategy at various times on August 15, 2007.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 13:**    At approximately 12:30 a.m. while still talking to Mrs. Cipra-Valiga, Mr. Bechtel began to walk toward a walking trail, which ran around the meeting house, and motioned for Mrs. Cipra-Valiga to join him.

**Answer to Paragraph 13:**    Wells Fargo admits that Mrs. Cipra-Valiga voluntarily agreed to take a walk with Mr. Bechtel at some point during the evening of August 15, 2007.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 14:** During the walk, Mr. Bechtel continuously bumped his body into Mrs. Cipra-Valiga and poked her in the stomach making comments about how "tight [her] abs are."

**Answer to Paragraph 14:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 15:** Mrs. Cipra-Valiga began to feel uncomfortable so she walked faster while continuing to talk; however, Mr. Bechtel kept getting closer to her.

**Answer to Paragraph 15:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 16:** When Mr. Bechtel caught up to Mrs. Cipra-Valiga, he got behind her and pressed his body up against hers. He moved his hands under her arms and began moving his hands over her breasts and down below to her upper thigh area.

**Answer to Paragraph 16:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 17:** While doing so, Mr. Bechtel stated several times, in her right ear, "You have no idea how much I love you. I will take care of you. Kiss me."

**Answer to Paragraph 17:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 18:** Then, Mr. Bechtel moved his hands under her shirt and asked if she was wearing a bathing suit while proceeding to reach around to her back and untie her bathing suit strap.

**Answer to Paragraph 18:**   Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 19:**   This occurred very quickly and Mrs. Cipra-Valiga was in a state of disbelief and shock during these events. She grabbed her strap and stated, "What the f*** he thought he was doing." She then tied her swimsuit strap back up and stated to her supervisor, "I'm not interested in this. No."

**Answer to Paragraph 19:**   Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 20:**   Mr. Bechtel responded, "Come here and kiss me just once, come on Thea."

**Answer to Paragraph 20:**   Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 21:**   Mrs. Cipra-Valiga replied, "I am not going to do this with you" and then continued to walk back toward the meeting house.

**Answer to Paragraph 21:**   Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 22:**   Mr. Bechtel repeatedly yelled, "No harm, no fowl." He walked after her, grabbed her arm, and again asked for a kiss.

**Answer to Paragraph 22:**   Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 23:**    Mrs. Cipra-Valiga told him she was tired and going to bed. Then, she told him to have a good night.

**Answer to Paragraph 23:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 24:**    The evening of the 16th, Mr. Bechtel called Mrs. Cipra-Valiga's cellular phone and left a message. In the message, Mr. Bechtel stated that he missed her in the morning and hopes everything is okay at her branch.

**Answer to Paragraph 24:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 25:**    On August 20, 2007, Mrs. Cipra-Valiga contacted Employee Assisted Counseling and Maranda Jerkovic of Employee Relations, who stated that she would speak to Julie Miller of the Human Resources Department ("HR").

**Answer to Paragraph 25:**    Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 26:**    On August 21, 2007, Julie Miller contacted her at home and told her that they would perform a formal investigation. Mrs. Cipra-Valiga stated that she was afraid of reporting to Mr. Bechtel during the investigation and Ms. Miller said she would make arrangements for her to report directly to Peter Jianetti, the new Regional Manager, during the investigation.

**Answer to Paragraph 26:**    Wells Fargo admits that Julie Miller contacted Plaintiff at Plaintiff's home and informed Plaintiff that the Company would commence a formal investigation into the allegations she made regarding the events that occurred on August 15, 2007 between Plaintiff and Mr. Bechtel. Wells Fargo also admits that Ms. Miller told Plaintiff that the Company would make arrangements for Plaintiff to report directly to

8

Peter Jianetti during the investigation. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 27:**   Mrs. Cipra-Valiga also stated that she did not want Jim Linnane involved because of his personal relationship with Mr. Bechtel and his prior inaction to complaints she had made involving Mr. Bechtel.

**Answer to Paragraph 27:**   Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 28:**   On August 22, 2007, Mr. Jianetti met with Mrs. Cipra-Valiga in the Lincoln park office and asked her to tell him what happened and that he was sent to do the investigation.

**Answer to Paragraph 28:**   Wells Fargo admits that Mr. Jianetti met with Plaintiff on August 22, 2007 to inform her that the Company was commencing its investigation into the allegations surrounding her interactions with Mr. Bechtel on August 15, 2007 and that she would report directly to him while the investigation was pending. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 29:**   On August 28, 2007, Mrs. Cipra-Valiga informed Ms. Miller she did not feel comfortable working for or with Mr. Bechtel anymore due to the sexual harassment.

**Answer to Paragraph 29:**   Wells Fargo admits that, on or about August 28, 2007, Plaintiff told Ms. Miller that Plaintiff was uncomfortable reporting to Mr. Bechtel. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 30:** On August 31, 2007, Ms. Miller informed Mrs. Cipra-Valiga that they completed the investigation into her sex harassment charge, and they had given recommendations to Mr. Jianetti. Ms. Miller stated that they would likely continue to retain Mr. Bechtel and that she and Mr. Jianetti talked about transferring Mrs. Cipra-Valiga's branch to a different Area Manager in Illinois, Mike Axlerood. She indicated that Mr. Jianetti planned to meet with her on Tuesday, September 4, 2007, at 9:00 a.m. Ms. Miller asked Mrs. Cipra-Valiga to think about what they could do to retain her in the likely event that Mr. Bechtel stayed in his position.

**Answer to Paragraph 30:** Wells Fargo admits that, on August 31, 2007, Ms. Miller advised Mrs. Cipra-Valiga that she had completed the investigation into the Plaintiff's complaint of inappropriate behavior by Mr. Bechtel and that the situation would be addressed in a manner consistent with Wells Fargo's policies and practices. Wells Fargo further admits that Mrs. Cipra-Valiga disclosed to Ms. Miller that Mrs. Cipra-Valiga did not want to work for, and would not work with, Mr. Bechtel and that the two discussed this issue. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 31:** On September 4, 2007, Mr. Jianetti met with Mrs. Cipra-Valiga in her office and told her, while pounding on his desk that, "Rick isn't going anywhere. He owns Chicago." He added, "you've caused me a lot of trouble." Then, he asked Mrs. Cipra-Valiga if she would consider leaving her branch and being transferred to the Indiana branch. Mrs. Cipra-Valiga informed him that she did not want to leave her branch. Mr. Jianetti also stated, "we have to keep Rick happy."

**Answer to Paragraph 31:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 32:** Mr. Jianetti mentioned transferring Mrs. Cipra-Valiga's branch to a different Area Manager in Illinois, Mike Axlerood. Then, he stopped and stated that he needed to discuss with Jim Linnane. He excused Mrs. Cipra-Valiga from her office and called Mr. Linnane.

**Answer to Paragraph 32:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint. Answering further, Wells Fargo states that Mr. Jianetti told Plaintiff that the Company would explore the possibility of realigning the district so that Plaintiff's branch office would report directly to Mike Axlerood. The Company later decided that, due to Mr. Axlerood's short tenure with the Company, such a realignment would not be practical.

**Paragraph 33:** After speaking with Mr. Linnane, he informed Mrs. Cipra-Valiga that the Company's resolution was that they would not be transferring her and her branch to Mike Axlerood as discussed, but instead, she would still be reporting to Mr. Bechtel; however, communications would go through him.

**Answer to Paragraph 33:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint. Answering further, Wells Fargo states that Mr. Jianetti told Plaintiff that the Company would explore the possibility of realigning the district so that Plaintiff's branch office would report to Mike Axlerood. The Company later decided that, due to Mr. Axlerood's short tenure with the Company, such a realignment would not be practical.

**Paragraph 34:** During this conversation, Mr. Jianetti informed her that Mr. Bechtel would get the Rubloff joint venture account, which was an account that she received from Mr. Bechtel several years ago and built up, because he brought the account in. Following their conversation, Mr. Jianetti spoke with Mr. Bechtel. Three hours later, he called Mrs. Cipra-Valiga and returned the account to her.

**Answer to Paragraph 34:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 35:** On September 6, 2007, Mrs. Cipra-Valiga called HR and asked why she would be reporting to Mr. Jianetti instead of Mr. Axlerood as they had discussed. Mrs. Cipra-Valiga stated that she would not continue to work for Mr. Bechtel or his area.

**Answer to Paragraph 35:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 36:** Ms. Miller admitted that Mrs. Cipra-Valiga was subjected to harassment, but stated that management was not required to transfer the branch to another area.

**Answer to Paragraph 36:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 37:** Because Wells Fargo's resolution to force her to continue to work to some degree with Mr. Bechtel was unacceptable and unreasonable, Mrs. Cipra-Valiga felt she had no other option but to resign.

**Answer to Paragraph 37:** Wells Fargo has insufficient information upon which to form a belief as to the truth of the allegations as stated in this Paragraph of the Complaint and therefore denies same.

**Paragraph 38:** On September 7, 2007, Mrs. Cipra-Valiga resigned as a result of constructive discharge based on Wells Fargo's refusal to transfer either Mrs. Bechtel or Mrs. Cipra-Valiga and her branch to another area in Illinois.

**Answer to Paragraph 38:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 39:** One hour after she resigned, Todd Olson reassigned all Mrs. Cipra-Valiga's offices most lucrative builder accounts to a new hire, Jeff Lapka.

**Answer to Paragraph 39:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 40:** Mrs. Cipra-Valiga learned that Mr. Olson was planning to take away Mrs. Cipra-Valiga's offices most lucrative accounts even prior to her resignation.

**Answer to Paragraph 40:** Wells Fargo has insufficient information upon which to form a belief as to the truth of the allegations as stated in this Paragraph of the Complaint. Answering further, Wells Fargo denies that the Company planned to take away Mrs. Cipra-Valiga's offices most lucrative accounts prior to her resignation.

**Paragraph 41:** On September 12, 2007, Mrs. Cipra-Valiga sent a letter to Julie Miller stating that she was under extreme emotional duress when she resigned and she would like to withdraw her resignation and asked for Short Term Disability ("STD") benefits and Family Medical Leave Act ("FMLA") claims forms.

**Answer to Paragraph 41:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 42:** On September 13, 2007, Mrs. Cipra-Valiga spoke with Mr. Jianetti on the phone and he advised her that he has accepted her resignation and that he has terminated her in the system and does not understand why he would rescind at this time; therefore, she would not be eligible for STD or FMLA.

**Answer to Paragraph 42:** Wells Fargo admits that Plaintiff spoke with Mr. Jianetti via telephone on or about September 13, 2007 and that Mr. Jianetti advised Plaintiff that he had accepted her resignation. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 43:**    Anie Hovakimian also reported to human resources that Mr. Bechtel had sexually harassed her.

**Answer to Paragraph 43:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

### COUNT I – SEX DISCRIMINATION/SEX HARASSMENT

**Paragraph 44:**    Plaintiff realleges paragraphs 1-43 of the General Allegations as paragraphs 1-43 of Count I of this complaint.

**Answer to Paragraph 44:**    Wells Fargo reasserts and incorporates its answers to Paragraphs 1-43 of the Complaint as though fully stated herein.

**Paragraph 45:**    Plaintiff was subjected to unwelcome sexual harassment by her supervisor, Richard Bechtel. He touched her in an unwanted manner and exhibited inappropriate behavior in front of other employees at a company offsite.

**Answer to Paragraph 45:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 46:**    The harassment was based on Plaintiff's sex, a female.

**Answer to Paragraph 46:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 47:**    The harassment unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment.

**Answer to Paragraph 47:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

14

**Paragraph 48:** Wells Fargo is liable. Richard Bechtel was Plaintiff's direct supervisor. Plaintiff informed human resources of the sexual harassment. The company resolution was unreasonable as Plaintiff would have to continue to work with her harasser, Mr. Bechtel, and he would still have some supervisory authority over her.

**Answer to Paragraph 48:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 49:** As a direct and proximate result of these actions, Plaintiff has suffered a loss in income and emotional distress.

**Answer to Paragraph 49:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 50:** In addition, Defendant's conduct was malicious and/or reckless in its disregard for plaintiff's civil rights.

**Answer to Paragraph 50:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

### COUNT II – NON-COMPLIANCE WITH THE PERSONNEL RECORD REVIEW ACT, 820 ILCS 40/1 *et seq*.

**Paragraph 44:** Plaintiff realleges paragraphs 1-43 of the General Allegations as paragraphs 1-43 of Count II of this complaint.

**Answer to Paragraph 44:** Wells Fargo reasserts and incorporates its answers to Paragraphs 1-43 of the Complaint as though fully stated herein.

**Paragraph 45:**   This Court has jurisdiction pursuant to 820 ILCS 40/12(c) because Plaintiff is employed in Illinois and the personnel record is maintained in Illinois.

**Answer to Paragraph 45:**   Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 46:**   820 ILCS 40/2, explains:

Open Records. Every employer shall, upon an employee's request which the employer may require be in writing on a form supplied by the employer, permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action, except as provided in Section 10. The inspection right encompasses personnel documents in the possession of a person, corporation, partnership, or other association having a contractual agreement with the employer to keep or supply a personnel record. An employee may request all or any part of his or her records, except as provided in Section 10. The employer shall grant at least 2 inspection requests by an employee in a calendar year when requests are made at reasonable intervals, unless otherwise provided in a collective bargaining agreement. The employer shall provide the employee with the inspection opportunity within 7 working days after the employee makes the request or if the employer can reasonably show that such deadline cannot be met, the employer shall have an additional 7 days to comply. The inspection shall take place at a location reasonably near the employee's place of employment and during normal working hours. The employer may allow the inspection to take place at a time other than working hours or at a place other than where the records are maintained if that time or place would be more convenient for the employee. Nothing in this Act shall be construed as a requirement that an employee be permitted to remove any part of such personnel records or any part of such records from the place on the employer's premises where it is made available for inspection. Each employer shall retain the right to protect his records from loss, damage, or alteration to insure the integrity of the records. If an employee demonstrates that he or she is unable to review his or her personnel record at the employing unit, the employer shall, upon the employee's written request, mail a copy of the requested record to the employee. (Source: P.A. 83-1362.)

**Answer to Paragraph 46:**   Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 47:**     Furthermore, 820 ILCS 40/3 provides:

Copies.  After the review time provided in Section 2, an employee may obtain a copy of the information or part of the information contained in the employee's personnel record.  An employer may charge a fee for providing a copy of such information.  The fee shall be limited to the actual cost of duplicating the information.  (Source: P.A. 83-1104.)

**Answer to Paragraph 47:**     Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 48:**     On October 10, 2007, Mrs. Cipra-Valiga, through counsel, requested a copy of her personnel file pursuant to 820 ILCS 40/1 *et seq.*, (copy of request attached as Exhibit C) and Wells Fargo refused.

**Answer to Paragraph 48:**     Wells Fargo admits that, on or about October 10, 2007, Plaintiff's counsel requested a copy of Plaintiff's personnel file.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 49:**     On November 5, 2007, Mrs. Cipra-Valiga, through counsel, sent a letter to Wells Fargo again requesting a copy of her personnel file and enclosing an Authorization for Release and Copying of Employment Records.  Wells Fargo again refused.

**Answer to Paragraph 49:**     Wells Fargo admits that on or about November 5, 2007, Mrs. Cipra-Valiga, through her counsel, sent a letter to Wells Fargo in which he requested a copy of Plaintiff's personnel file.  Wells Fargo also admits that an Authorization for Release and Copying of Employment Records was enclosed therewith.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 50:** Thus, efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed.

**Answer to Paragraph 50:** Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**WHEREFORE**, Wells Fargo states that Plaintiff is not entitled to the relief sought and prays that this Honorable Court enter judgment in Wells Fargo's favor and against Plaintiff and orders Plaintiff to pay all attorney fees and costs incurred by Wells Fargo in defending this action.

Dated: June 3, 2008.

                                              Respectfully submitted,

                                              **WELLS FARGO HOME MORTGAGE**

                                              By:    s/*Nigel F. Telman*
                                                                   One of its Attorneys

Nigel F. Telman, Esq.
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL 60603
Phone: (312) 853-2106
Fax: (312) 853-7036
Email: ntelman@sidley.com

## CERTIFICATE OF SERVICE

  I, Nigel F. Telman, one of the attorneys for Defendant Wells Fargo Home Mortgage, certify that I caused a copy of the attached Answer to Plaintiff's Complaint to be served by e-mail through the Court's ECF system, upon counsel for Plaintiff:

David Bryant, Esq.
Daley, Debofsky & Bryant
55 West Monroe Street
Suite 2440
Chicago, Illinois 60603

this 3rd day of June, 2008.

s/*Nigel F. Telman*

CH1 4275699v.1