IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THEA L. CIPRA-VALIGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 CV 1480 |
| v. | ) | |
| | ) | |
| WELLS FARGO HOME MORTGAGE, | ) | Judge James B. Zagel |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WELLS FARGO HOME MORTGAGE'S
MOTION TO VACATE THE ENTRY OF DEFAULT AND RELIEVE WELLS FARGO
FROM THE COURT'S ORDER STRIKING WELLS FARGO'S ANSWER**

Pursuant to Federal Rules of Civil Procedure 6(b)(2), 55(c), and 60(b), defendant, Wells Fargo Home Mortgage ("Wells Fargo" or the "Company"), by its counsel, Sidley Austin LLP, respectfully requests that the Court vacate its entry of default and relieve Wells Fargo from the Court's order striking Wells Fargo's Answer. In support of its Motion, Wells Fargo states as follows:

**FACTS**

1.      On March 12, 2008, Plaintiff Thea L. Cipra-Valiga ("Plaintiff") filed a complaint against Wells Fargo in the above-captioned case.

2.      On or about April 3, 2008, Plaintiff mailed counsel for Wells Fargo a Notice of Lawsuit and Request for Waiver of Service, Complaint, and Waiver of Service of Summons. (*See* Affidavit of Nigel F. Telman ("Aff.") ¶ 3).

3.      On or about April 14, 2008, counsel for Wells Fargo executed the Waiver of Service of Summons on behalf of Wells Fargo. Plaintiff filed the executed Waiver with the Court on or about April 17, 2008. (Aff. ¶ 7).

4.      Pursuant to Federal Rule of Civil Procedure 4(d)(3), Wells Fargo had until June 2, 2008, to respond to the Complaint by filing an Answer or other responsive pleading.

5.      As the result of a good faith miscalculation of time by counsel for Wells Fargo, Wells Fargo filed its Answer on June 3, 2008—one day late.  (Aff. ¶¶ 11-12).  Wells Fargo's failure to Answer or otherwise plead on time was inadvertent and the result of an unintentional mistake.

6.      On June 3, 2008, Plaintiff filed a joint Motion to Strike Defendant's Answer, Motion for an Order of Default Against Defendant, and Request for Hearing on Damages ("Motion for Default").  Plaintiff filed its Motion after Wells Fargo filed its Answer.  (*See* Mot. for Default ¶ 13).  Plaintiff scheduled the Motion for Default to be presented to the Court on June 10, 2008, and served Wells Fargo's counsel by U.S. Mail.

7.      Wells Fargo's counsel received its copy of the Motion for Default by mail in the afternoon of June 9, 2008.  (Aff. ¶ 13).

8.      Counsel for Wells Fargo did not become aware of its miscalculation of the date and resulting late filing of its Answer until June 9, 2008.  (Aff. ¶ 13).

9.      Counsel for Wells Fargo, Nigel Telman, was present at Court at the date and time scheduled for the Motion for Default to be presented – Tuesday, June 10, at 10:15 a.m. – and was prepared to explain the reason for the delayed filing of Wells Fargo's Answer and to request an extension of time by one day to permit the filing of the Answer.  (Aff. ¶ 14).

10.     However, upon arriving at the courtroom, counsel learned that the Court had already entered a Minute Order on the Motion for Default.  (*See id.*)  Consequently, the Court entered a default against Wells Fargo, struck Wells Fargo's Answer, and set an evidentiary hearing on the issue of damages for June 18, 2008, at 10:30 a.m.  (*See* Docket Entry 12).

11.     Wells Fargo has consistently demonstrated that it is an active, available participant in this litigation.  Wells Fargo timely executed a Waiver of Service, has corresponded on a regular and timely basis with counsel for Plaintiff concerning multiple preliminary matters, and has produced Plaintiff's personnel file to her counsel.  All actions by Defendant in this case have been taken for the good faith purposes of meritoriously defending itself.

### ARGUMENT

12.     Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause . . . ."  Federal Rule of Civil Procedure 55(c).  "[I]n general, in the absence of a showing of willfulness, courts in the Seventh Circuit are more likely than not to set aside an entry of default or even to vacate a default judgment."  *Hamilton v . Ill. Central R.R. Co.*, No. 07-0383, 2008 WL 78784, at *4 (S.D. Ill. Jan. 7, 2008) (*citing Sims v. EGD Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007)); *see also C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984).  This is also due, in part, to the reluctance of courts to enter a default or a default judgment.  *See Stafford v. Mesnik*, 63 F.3d 1445, 1450 (7th Cir. 1995) ("[A] default judgment should not be considered a ready response to all litigant misbehavior."); *Stainback v. Dixon*, No. 07 C 3091, 2007 WL 2684086, at *1 (C.D. Ill. July 3, 2007) (Because a default judgment is a harsh sanction, it should be employed only in extreme situations when other less drastic sanctions have proven unavailing.") (*quoting C.K.S. Engineers, Inc.*, 726 F.2d at 1205).

13.     Seventh Circuit precedent teaches that in order to vacate an entry of default, "the moving party must show: (1) good cause for default, (2) quick action to correct it, and (3) meritorious defense to plaintiff's complaint."  *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994).

14.    The test for setting aside an entry of default under Rule 55(c) is same as the test for setting aside a default judgment under Rule 60(b), except that the test for setting aside an entry of default "is applied more liberally" than the test for setting aside a default judgment. *Medline*, 218 F.R.D. at 172 (*citing United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir. 1989)).  Further, "[a]s long as the movant seeking timely relief has a meritorious defense, doubt should be resolved in favor of a motion to set aside the judgment."  *Flexicorps, Inc. v. Beck*, No. 02 C 8167, 2003 WL 223441, at *2 (N.D. Ill. Jan. 31, 2003) (*quoting* 11 Charles Wright, Arthur Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d § 2857*, at 258 (2d ed. 1995).

15.    "A showing of 'excusable neglect' can establish good cause for the default."  *Medline Indus., Inc. v. Medline Rx Finan., LLC*, 218 F.R.D. 170, 172 (N.D. Ill. 2003) (*citing Robb v. Norfolk & Western R.R. Co.*, 122 F.3d 354, 359 (7th Cir. 1997)).  Even under the more stringent standard of Rule 60(b), "'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence," including attorney carelessness, and it is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 391, 394 (1993); *Flexicorps*, 2003 WL 223441, at *2 (*quoting Pioneer*, 507 U.S. at 394).

16.    A meritorious defense "is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis.  *Sullivan v. General Plumbing, Inc.*, No. 06 C 2464, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007) (*quoting Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)).

17. The instant motion should be granted for a number of reasons. First, Plaintiff relies on two sets of cases in her Motion for Default, both of which are distinguishable from the instant matter. She relies first on *Stevens v. Continental Mobile Tel. Co.*, No. 95 C 3841, 1996 WL 328021 (N.D. Ill. June 4, 1996), and others to argue that her case should not be "hindered" by litigants who fail to pursue their positions vigorously. (Mot. for Default ¶ 8).

18. These cases, however, are inapposite to this case. Unlike in *Stevens*, where a defendant delayed filing an answer for over four months, the delay at issue here is only one day. Further, Wells Fargo has consistently displayed a pattern of availability and interaction with Plaintiff's counsel on multiple matters pertaining to this litigation, including promptly informing Plaintiff that it had retained counsel and providing the identity of its counsel, waiving its right to service of the Complaint, and producing documents to Plaintiff's counsel as required under the Illinois Personnel Records Review Act, 820 ILCS 40/1 *et seq.* ("IPRRA"). (*See* Aff. ¶ 8). Thus, Wells Fargo has not "exhibited a willful refusal to litigate the case properly," justifying entry of default. *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003).

19. Second, Wells Fargo has also demonstrated good faith conduct in all aspects of this litigation, unlike the defendant in *In re State Exchange Finance Co.*, 896 F.2d 1104 (7th Cir. 1990) and other cases upon which Plaintiff relies.

20. Third, Plaintiff argues that a delay should not be allowed absent a showing of good cause for the default. (Mot. for Default ¶ 11). As discussed, *infra.*, Wells Fargo has, and has demonstrated, good cause for the default, in the form of excusable neglect. Moreover, the case law on which Plaintiff relies predates the Supreme Court's holding in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 391 (1993), that "excusable neglect" includes

situations where a deadline was missed due to negligence, oversight, or mistake.  *See id.* at 394.
Plaintiff's position is unfounded and contradicts current precedent.

21.     In the instant matter, Wells Fargo's filing of its Answer one day late was
the result of the inadvertent negligence of Defendant's counsel.  Counsel for Wells Fargo
unintentionally and mistakenly miscalculated the date by which Wells Fargo had to answer or
otherwise plead.  He believed the deadline to be on June 3, 2008.  It was, instead, due on June 2,
2008.  This is precisely the type of mistake contemplated by the U.S. Supreme Court in *Pioneer*
as amounting to excusable neglect.

22.     Moreover, although counsel had the Answer prepared in advance of the
June 3, 2008 filing date, it is his practice not to file Answers prior to the deadline in order to
accommodate any additional client comments, which based on his experience handling fact-
intensive employment disputes, sometimes arise near the filing deadline.  (*See* Aff. ¶ 10).
Accordingly, Plaintiff's counsel's failure to timely file the Answer on June 2 cannot be attributed
to a lack of diligence with respect to his preparation for the defense this case.

23.     Consequently, under all applicable caselaw, Wells Fargo's failure to
comply with the deadline to file an Answer or other pleading responsive to Plaintiff's Complaint
constitutes excusable neglect under Supreme Court and Seventh Circuit precedent.  This
excusable neglect is sufficient to demonstrate the existence of good cause for the default.

24.     Fourth, Wells Fargo has undertaken quick action to correct the Court's
striking of Wells Fargo's answer and entry of default.  The Court struck Wells Fargo's Answer
and entered default against Wells Fargo on June 10, 2008.  Within an hour of learning of the
Court's ruling, Wells Fargo began researching and drafting this Motion to Vacate.  Wells Fargo
promptly filed its Motion to Vacate the following morning.

25.     Fifth, Wells Fargo's Answer contains meritorious defenses to Plaintiff's Complaint.  As detailed at length in its Answer, Wells Fargo contends that it investigated fully the allegations brought to its attention by Plaintiff.  In doing so, it complied not only with Title VII of the Civil Rights Act ("Title VII") but also with its expressly-stated policies for investigating and handling claims of sexual harassment and sex discrimination.  As a result, Wells Fargo will demonstrate that it did not violate Plaintiff's rights under Title VII.  In contravention of Count II of Plaintiff's Complaint, Wells Fargo will prove that it fully complied with the IPRRA.

26.     Further, and relatedly, Wells Fargo respectfully requests that the Court, in its discretion, order enlarged by one day the period within which Wells Fargo's Answer is due.  Such a holding would likely be "implicit" in a decision by the Court to vacate the entry of default, as requested *supra*.  *Westerfield v. Quiznos Franchise Co., LLC*, No. 06 C 1210, 2007 WL 543449, at *4 (E.D. Wis. Feb. 16, 2007).

27.     Federal Rule of Civil Procedure 6(b) allows the Court, at its discretion, "to grant a party an extension of time after a deadline has passed where the party's failure to meet the deadline is due to "'excusable neglect.'"  *Koch-Weser v. Board of Educ. of Riverside Brookfield High School Dist. 208*, No. 98 C 5157, 2001 WL 1064592, at *1 (N.D. Ill. Sept. 13, 2001).

28.     The Supreme Court has identified several factors relevant to determining whether to grant an extension of time under the present circumstances, including "(1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings;  (3) the reasons for delay, including whether it was within reasonable control of the movant; and (4) whether the movant acted in good faith."  *Pioneer*, 507 U.S. at 395.

29.     As discussed *supra.*, Wells Fargo's failure to file its Answer within the originally prescribed period was not made in bad faith.  Instead, it was the result of an accidental oversight by Wells Fargo's counsel.  Further, Wells Fargo mistakenly filed its Answer only one day after the deadline, receiving no benefit by its delay.   Nor has Plaintiff been prejudiced in any fashion by Wells Fargo's one-day delay in filing its Answer.  These proceedings will suffer no ill-effects as a result of Wells Fargo filing its Answer one day after the deadline.

30.     Therefore, under the standard set forth in *Pioneer* and its progeny, the neglect of the deadline at issue constitutes "excusable neglect" for which it is appropriate for the Court to grant an extension.  *See Pioneer*, 507 U.S. at 394; *Westerfield*, 2007 WL 543449, at *4.


WHEREFORE, Defendant Wells Fargo Home Mortgage respectfully requests that this Court vacate its June 10, 2008 entry of default against Wells Fargo and order striking its Answer, and further that pursuant to Fed. R. Civ. P. 6(b) to exercise its discretion and extent the deadline by which Wells Fargo was to file its Answer up to and including June 3, 2008.

Dated: June 11, 2008.

Respectfully submitted,

**WELLS FARGO HOME MORTGAGE**


By:      s/*Nigel F. Telman*
             One of its Attorneys


Nigel F. Telman, Esq.
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL  60603
Phone: (312) 853-2106
Fax: (312) 853-7036
Email: ntelman@sidley.com

**CERTIFICATE OF SERVICE**

I, Nigel F. Telman, one of the attorneys for Defendant Wells Fargo Home Mortgage, certify that I caused a copy of the attached document to be served by e-mail through the Court's ECF system and by United States mail, first class postage prepaid, upon counsel for Plaintiff:

David Bryant, Esq.
Daley, Debofsky & Bryant
55 West Monroe Street
Suite 2440
Chicago, Illinois 60603

this 11th day of June, 2008.

s/*Nigel F. Telman*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THEA L. CIPRA-VALIGA,                    )
                                         )
                Plaintiff,               )
                                         )        No. 08 CV 1480
        v.                               )
                                         )
WELLS FARGO HOME MORTGAGE,               )        Judge James B. Zagel
                                         )
                Defendant.               )

## AFFIDAVIT OF NIGEL F. TELMAN

Comes the Affiant, Nigel F. Telman, after first being duly sworn, and for his Affidavit states as follows:

1.      On or about March 20, 2008, I was retained as counsel for Wells Fargo Home Mortgage in the above-titled action.

2.      On or about March 28, 2008, counsel for Plaintiff Thea L. Cipra-Valiga in the above-titled action was notified by Wells Fargo that I had been retained as counsel in the above-titled action. (*See* Letter from Gene Sheih to David A. Bryant, attached hereto as Exhibit A.)

3.      On or about April 6, 2008, I received a Notice of Lawsuit and Request for Waiver of Service, Complaint, and Waiver of Service of Summons from counsel for Plaintiff, all of which were dated April 3, 2008.

4.      On April 8, 2008, I sent counsel for Plaintiff a letter in which I indicated that I had been retained as counsel for Wells Fargo in the above-titled matter and

requested that all further communication regarding this matter be directed to me.
(Attached hereto as Exhibit B.)

     5.     On or about April 12, 2008, I requested that Plaintiff's counsel send me copies of the attachments to Plaintiff's complaint as such were not included in the material I received.

     6.     On or about April 14, 2008, I received from Plaintiff's counsel the requested documents.

     7.     Thereafter, on or about April 14, 2008, I executed the Waiver of Service of Summons on April 14, 2008, on behalf of Wells Fargo Home Mortgage and returned the document to counsel for Plaintiff.  (Attached hereto as Exhibit C.)

     8.     By letter dated April 21, 2008, I corresponded with counsel for Plaintiff concerning Wells Fargo's production of Plaintiff's personnel file to her counsel and various matters relating to the retention of materials in anticipation of discovery. (Attached hereto as Exhibit D.)

     9.     Using the documents I received from Plaintiff, I inadvertently and erroneously calculated the deadline to Answer or otherwise respond to Plaintiff's Complaint as being June 3, 2008.

     10.     Although I had the Answer prepared in advance of the June 3, 2008 filing date, it is my practice not to file Answers prior to the deadline in order to accommodate any additional client comments.  Based on my experience, clients sometimes provide last-minute comments and edits near the filing deadline.

11.    On June 3, 2008, my office filed Wells Fargo's Answer to Plaintiff's Complaint via the United States District Court for the Northern District of Illinois's CM/ECF system.   (Attached hereto as Exhibit E.)

12.    Consequently, Wells Fargo's Answer to Plaintiff's Complaint was filed one day after the deadline established by Federal Rule of Civil Procedure 4(d)(3).

13.    I discovered that Wells Fargo's Answer had been filed one day after the deadline on June 9, 2008 when I learned that Plaintiff was scheduled to present to the Court a Motion to Strike Defendant's Answer, a Motion for an Order of Default Against Defendant, and a request for Hearing on Damages on June 10, 2008, at 10:15 a.m.

14.    On June 10, 2008, at approximately 9:45  a.m., I arrived in Courtroom 2305 to explain the reason for Wells Fargo's late filing of its Answer.  The above-titled case was not called for presentment of the motion.  Instead, I learned from the Court's Clerk that the Court granted Plaintiff's Motion to Strike Wells Fargo's Answer, granted Plaintiff's Motion for Entry of Default, granted Plaintiff's Motion for a Damages Hearing, and scheduled an evidentiary hearing for June 18, 2008, at 10:30 a.m.

15.    I immediately began preparing a Motion to Vacate the Entry of Default and Motion to Relieve Wells Fargo from the Court's order striking Wells Fargo's Answer.

16.    I did not consciously or intentionally file Wells Fargo's Answer after the deadline for submission.  The delay was the result of an inadvertent miscalculation of the calendar date by which a response to Plaintiff's Complaint was due.

All facts are based on my personal knowledge which I would be willing to testify to if called as a witness at trial.

Further, the Affiant sayeth not.

Nigel F. Telman

STATE OF ILLINOIS        )
                         )
COUNTY OF COOK           )

Subscribed and sworn to before me by Nigel F. Telman on this the _____ day of
_____ 2008.

"OFFICIAL SEAL"
Jennifer N. Read
Notary Public, State of Illinois
My Commission Expires June 8, 2009

4

# EXHIBITS A THRU E TO AFFIDAVIT OF NIGEL F. TELMAN

# EXHIBIT A

March 28, 2008

David A. Bryant                                          **VIA FACSIMILE**
Daley, Debofsky & Bryant
55 W. Monroe Street, Ste. 2440
Chicago, IL 60603

     **RE: Cipra-Valiga, Thea L.**

Dear Mr. Bryant:

    This letter serves to inform you that Wells Fargo has retained Nigel F. Telman as counsel. Your letter dated March 18, 2008, regarding Cipra-Valiga's personnel file and preservation of evidence is being forwarded to Mr. Telman who will respond accordingly.  Thank you.

              Sincerely,

              *Gene Sheih*

              Gene Sheih
              Senior Counsel

Enclosures

GS:MML

cc: Nigel F. Telman, Esq.
    Sidley Austin LLP
    One South Dearborn Street
    Chicago, IL  60603

# EXHIBIT B

# SIDLEY AUSTIN LLP
# SIDLEY|

| | |
|---|---|
| SIDLEY AUSTIN LLP | BEIJING · LOS ANGELES |
| ONE SOUTH DEARBORN | BRUSSELS · NEW YORK |
| CHICAGO, IL 60603 | CHICAGO · SAN FRANCISCO |
| (312) 853 7000 | DALLAS · SHANGHAI |
| (312) 853 7036 FAX | FRANKFURT · SINGAPORE |
| | GENEVA · SYDNEY |
| | HONG KONG · TOKYO |
| | LONDON · WASHINGTON, D C. |

ntelman@sidley.com
(312) 853-2106                    FOUNDED 1866

April 8, 2008

David A. Bryant, Esq.
Daley, Debofsky & Bryant
55 West Monroe Street,
Suite 2440
Chicago, Illinois 60603

    Re:   *Cipra-Valiga v. Wells Fargo Home Mortgage*

Dear Mr. Bryant:

    This firm has been retained to represent Wells Fargo Home Mortgage ("WFHM") in the referenced litigation. As such, please direct all future communications regarding this matter to my attention.

    We are in receipt of your letter directed to Eugene Sheih dated March 18, 2008 in which you assert that WFHM's production of Ms. Cipra-Valiga's personnel records does not comply with the Illinois Personnel Records Review Act ("IPRRA"). It is my understanding that all required documents have been provided to you by WFHM and that such production was made in a timely manner. I am beginning my review of the materials related to this case. To the extent I identify any additional documents to which Ms. Cipra-Valiga may be entitled under the IPRRA, all such documents will be made available for her and your review. Please contact me directly if you wish to discuss this matter further.

        Regards,

        Nigel F. Telman

cc:    Gene Sheih ✓

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

# EXHIBIT C

AO 399 (Rev. 05/00)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

### Waiver of Service of Summons

TO: _____ David A. Bryant _____
(NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

I, WELLS FARGO HOME MORTGAGE _____, acknowledge receipt of your request
(DEFENDANT NAME)

that I waive service of summons in the action of CIPRA-VALIGA v WELLS FARGO HOME MORTGAGE ,
(CAPTION OF ACTION)

which is case number _____ 08-CV-1480 _____ in the United States District Court
(DOCKET NUMBER)

for the Northern District of Illinois.

  I have also received a copy of the complaint in the action, two copies of this instrument, and a means
by which I can return the signed waiver to you without cost to me.

  I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit
by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the
manner provided by Rule 4.

  I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the
jurisdiction or venue of the court except for objections based on a defect in the summons or in the service
of the summons.

  I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if

an answer or motion under Rule 12 is not served upon you within 60 days after ____ 04/03/08 ____,
(DATE REQUEST WAS SENT)

or within 90 days after that date if the request was sent outside the United States.

____4/14/2008____        ____Nigel L. Telman____
(DATE)                        (SIGNATURE)

Printed/Typed Name: ____NIGEL TELMAN____

As ____ATTORNEY____ of ____WELLS FARGO HOME MORTGAGE____
(TITLE)                        (CORPORATE DEFENDANT)

### Duty to Avoid Unnecessary Costs of Service of Summons

  Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the
summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located
in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown
for its failure to sign and return the waiver.

  It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been
brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A
party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service
of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

  A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or
unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or
motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed
more time to answer than if the summons had been actually served when the request for waiver of service was received.

# EXHIBIT D



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL  60603
(312) 853 7000
(312) 853 7036 FAX

ntelman@sidley.com
(312) 853-2106

| BEIJING | LOS ANGELES |
| BRUSSELS | NEW YORK |
| CHICAGO | SAN FRANCISCO |
| DALLAS | SHANGHAI |
| FRANKFURT | SINGAPORE |
| GENEVA | SYDNEY |
| HONG KONG | TOKYO |
| LONDON | WASHINGTON, D.C. |

FOUNDED 1866

April 21, 2008

**By Email and U.S. Mail**

David Bryant, Esq.
Daley, Debofsky & Bryant
55 West Monroe Street
Suite 2440
Chicago, Illinois  60603

Re:  *Cipra-Valiga v. Wells Fargo Home Mortgage*

Dear Mr. Bryant:

As previously disclosed, this firm represents Wells Fargo Home Mortgage ("Wells") in the referenced matter.  This correspondence responds to your letter to Eugene Sheih dated March 18, 2008 within which you assert that Wells' production of Ms. Cipra-Valiga's personnel records pursuant to the Illinois Personnel Records Review Act ("IPRRA") is non-compliant with the act. We disagree with your assertion of non-compliance. As you acknowledged in your March 18th correspondence, the IPRRA requires an Illinois employer to make available for review by a current or former employee only "personnel documents which *are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action.*" All such documents related to Ms. Cipra-Valiga have been submitted to you for review. We disagree with your assertion that emails and other documents related to alleged complaints of harassment should have been included in Wells' IPRRA production. Such documents, to the extent they exist, do not fall into any of the categories of documents described above. Moreover, the IPRRA makes clear that, to the extent any records exist that are "relevant to any other pending claim between the employer and employee which may be discovered in a judicial proceeding," such documents are not required to be produced for inspection under the IPRRA. *See,* 820 ILCS 40/10(f)  Of course, we invite you to refer us to any relevant Illinois authority that you believe contradicts our conclusions as outlined herein.

Further to your March 18th correspondence, Wells is well aware of its obligations to institute an appropriate litigation hold to avoid inadvertent spoliation of documents relevant to (and within the scope of) the allegations contained in Ms. Cipra-Valiga's Complaint. Wells has implemented a litigation hold in accordance with its obligations in this regard, the scope of which is consistent with the facts asserted in the complaint,



David Bryant, Esq.
April 21, 2008
Page 2


      Please do not hesitate to contact me should you have any questions or concerns regarding this matter.


                                    Regards,

                                      Nigel F. Telman


cc      Gene Sheih, Esq.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THEA L. CIPRA-VALIGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.    08 CV 1480 |
| v. | ) | |
| | ) | |
| WELLS FARGO HOME MORTGAGE, | ) | Judge James B. Zagel |
| | ) | |
| Defendant. | ) | |

## DEFENDANT WELLS FARGO HOME MORTGAGE'S
## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Wells Fargo Home Mortgage ("Wells Fargo" or the "Company"), by

its counsel, hereby responds to Plaintiff, Thea L. Cipra-Valiga's ("Cipra-Valiga's" or

"Plaintiff's") Complaint as follows:

### Nature of Action

**Paragraph 1:** This is a claim for discrimination in employment.  Plaintiff alleges she
was discriminated against in her employment by Wells Fargo on account of sex in violation of
Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*.  Plaintiff seeks
damages, inclusive of punitive damages pursuant to the Civil Rights Act of 1991, as well as
recovery of her attorney's fees and costs.

**Answer to Paragraph 1:**      Wells Fargo admits that Plaintiff has filed a complaint and

seeks monetary damages against Wells Fargo under Title VII of the Civil Rights Act of

1964, as amended 42 U.S.C. § 2000e *et seq*. ("Title VII")  Wells Fargo further admits

that Plaintiff's complaint alleges that the Company discriminated against her on the basis

of her gender.  Wells Fargo denies all remaining allegations as stated in this Paragraph of

the Complaint including, without limitation, that it discriminated against Plaintiff in

violation of Title VII.

### Jurisdiction and Venue

**Paragraph 2:** The court's jurisdiction derives from Title VII of the Civil Rights Act of 1964, as amended. Plaintiff has filed timely charges of discrimination with both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, which resulted in a notice of a right to sue (attached as Exhibit A and Exhibit B respectively). Therefore, this court has jurisdiction over the subject matter of this claim in accordance with 42 U.S.C. § 2000e-5(f)(3). Jurisdiction is also founded upon 28 U.S.C. §§ 1331 and 1343(a)(4).

**Answer to Paragraph 2:** Wells Fargo admits that (i) the Court has jurisdiction of this matter; and (ii) the documents attached to the Complaint as Exhibits A and B indicate that Plaintiff timely filed charges of discrimination with the Equal Opportunity Commission and the Illinois Department of Human Rights and that a notice of right to sue was issued. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 3:** Defendant is located within this judicial district. Venue is therefore proper in this judicial district in accordance with 28 U.S.C. § 1291 and 28 U.S.C. § 1391(b).

**Answer to Paragraph 3:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

### The Parties

**Paragraph 4:** The Plaintiff, THEA L. CIPRA-VALIGA ("Cipra-Valiga"), is a female. At all times relevant hereto, she was a resident of Valparaiso, Indiana. From February, 2000 until September 7, 2007, Mrs. Cipra-Valiga was employed by WELLS FARGO HOME MORTGAGE ("Wells Fargo") as a Branch Sales Manager of the LP Chicago office.

**Answer to Paragraph 4:** Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 5:** Defendant, Wells Fargo is a diversified financial services company providing banking, insurance, investments, mortgage and consumer finance in Illinois. At all times relevant hereto, Defendant has continuously been and is now doing business in the State of Illinois and has continuously had at least fifteen (15) employees. Therefore, at all times relevant hereto, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of section 701(b), (g) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(b), (g) and (h).

**Answer to Paragraph 5:**   Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

### Facts

**Paragraph 6:** On August 15th and 16th 2007, Mrs. Cipra-Valiga attended a Chicago Area Top Producers Company offsite in Geneva, Wisconsin.

**Answer to Paragraph 6:**   Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.

**Paragraph 7:** On afternoon of August 15, 2007, the group took a boat tour around Lake Geneva, where alcohol was consumed.

**Answer to Paragraph 7:**   Wells Fargo admits that certain Wells Fargo employees took a group boat tour around Lake Geneva in the afternoon of August 15, 2007. Wells Fargo also admits that certain Wells Fargo employees consumed alcohol either before or during the boat tour. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 8:** On the evening of August 15, 2007, at the meeting house, approximately half of the group, including Richard Bechtel, Joyce Ciembrowski, Martha Vanbendegom, Rick Lapins, Neri Lugo, Jennifer Lewandowski, Ken Dickerson, Lane Sears, Rich Roller, and Troy Clemen, went downstairs of the meeting house to play cards and drink alcohol.

**Answer to Paragraph 8:**    Wells Fargo admits that in the evening of August 15, 2007, employees Richard Bechtel, Joyce Ciembrowski, Martha Vanbendegom, Rick Lapins, Neri Lugo, Jennifer Lewandowski, Ken Dickerson, Lane Sears, Rich Roller, and Troy Clemen voluntarily assembled at the meeting house after the conclusion of all Wells Fargo business meetings. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 9:** Mrs. Cipra-Valiga sat on a couch next to Joyce Ciembrowski, Mr. Bechtel's assistant, who was not playing cards. Mr. Bechtel was playing cards and was intoxicated. Mr. Bechtel threw a piece of ice by Mrs. Cipra-Valiga's head, which she picked up and threw back at Mr. Bechtel.

**Answer to Paragraph 9:**    Wells Fargo admits that (i) at some point during the evening of August 15, 2007, Mrs. Cipra-Valiga sat on a couch next to Joyce Ciembrowski; (ii) Ms. Ciembrowski was not playing cards at the time; and (iii) Mr. Bechtel threw a piece of ice by Mrs. Cipra-Valiga's head, which she picked up and threw back at Mr. Bechtel. Wells Fargo admits that Mr. Bechtel was playing cards but denies that he was intoxicated. Answering further, Wells Fargo states that Mr. Bechtel threw the ice toward Ms. Cipra-Valiga as a joke with no malicious intent and that Mrs. Cipra-Valiga understood the incident as such at the time and responded to Mr. Bechtel in a similar manner. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 10:**    Subsequently, Mr. Bechtel approached Mrs. Cipra-Valiga and Ms. Ciembrowski and asked them "How are my two favorite ladies." After which Mr. Bechtel sat on top of Mrs. Cipra-Valiga. Mrs. Cipra-Valiga pushed him off stating, "Get off of me, you big lug." Mr. Bechtel proceeded to pretend box at Mrs. Cipra-Valiga stating, "I can take you."

**Answer to Paragraph 10:**   Wells Fargo admits that Mr. Bechtel spoke with Mrs. Cipra-Valiga and Ms. Ciembrowski at various times during the gathering at the meeting house on August 15, 2007. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 11:**   Later, Mr. Bechtel asked Mrs. Cipra-Valiga to take a walk with him and motioned to the back door. Mrs. Cipra-Valiga looked at Ms. Ciembrowski and rolled her eyes. Then, she went over to Mr. Bechtel on the patio.

**Answer to Paragraph 11:**   Wells Fargo admits that Mr. Bechtel and Mrs. Cipra-Valiga took a walk at some point during the evening of August 15, 2007. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 12:**   They discussed business and strategy for approximately one hour. Mr. Bechtel called her a "high maintenance, female employee."

**Answer to Paragraph 12:**   Wells Fargo admits that Mrs. Cipra-Valiga and Mr. Bechtel discussed business and strategy at various times on August 15, 2007. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 13:**   At approximately 12:30 a.m. while still talking to Mrs. Cipra-Valiga, Mr. Bechtel began to walk toward a walking trail, which ran around the meeting house, and motioned for Mrs. Cipra-Valiga to join him.

**Answer to Paragraph 13:**   Wells Fargo admits that Mrs. Cipra-Valiga voluntarily agreed to take a walk with Mr. Bechtel at some point during the evening of August 15, 2007. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 14:**     During the walk, Mr. Bechtel continuously bumped his body into Mrs. Cipra-Valiga and poked her in the stomach making comments about how "tight [her] abs are."

**Answer to Paragraph 14:**     Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 15:**     Mrs. Cipra-Valiga began to feel uncomfortable so she walked faster while continuing to talk; however, Mr. Bechtel kept getting closer to her.

**Answer to Paragraph 15:**     Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 16:**     When Mr. Bechtel caught up to Mrs. Cipra-Valiga, he got behind her and pressed his body up against hers. He moved his hands under her arms and began moving his hands over her breasts and down below to her upper thigh area.

**Answer to Paragraph 16:**     Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 17:**     While doing so, Mr. Bechtel stated several times, in her right ear, "You have no idea how much I love you. I will take care of you. Kiss me."

**Answer to Paragraph 17:**     Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 18:**     Then, Mr. Bechtel moved his hands under her shirt and asked if she was wearing a bathing suit while proceeding to reach around to her back and untie her bathing suit strap.

**Answer to Paragraph 18:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 19:**    This occurred very quickly and Mrs. Cipra-Valiga was in a state of disbelief and shock during these events.  She grabbed her strap and stated, "What the f\*\*\* he thought he was doing."  She then tied her swimsuit strap back up and stated to her supervisor, "I'm not interested in this.  No."

**Answer to Paragraph 19:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 20:**    Mr. Bechtel responded, "Come here and kiss me just once, come on Thea."

**Answer to Paragraph 20:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 21:**    Mrs. Cipra-Valiga replied, "I am not going to do this with you" and then continued to walk back toward the meeting house.

**Answer to Paragraph 21:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 22:**    Mr. Bechtel repeatedly yelled, "No harm, no fowl."  He walked after her, grabbed her arm, and again asked for a kiss.

**Answer to Paragraph 22:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 23:**    Mrs. Cipra-Valiga told him she was tired and going to bed.  Then, she told him to have a good night.

**Answer to Paragraph 23:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 24:**    The evening of the 16th, Mr. Bechtel called Mrs. Cipra-Valiga's cellular phone and left a message.  In the message, Mr. Bechtel stated that he missed her in the morning and hopes everything is okay at her branch.

**Answer to Paragraph 24:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 25:**    On August 20, 2007, Mrs. Cipra-Valiga contacted Employee Assisted Counseling and Maranda Jerkovic of Employee Relations, who stated that she would speak to Julie Miller of the Human Resources Department ("HR").

**Answer to Paragraph 25:**    Wells Fargo admits the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 26:**    On August 21, 2007, Julie Miller contacted her at home and told her that they would perform a formal investigation.  Mrs. Cipra-Valiga stated that she was afraid of reporting to Mr. Bechtel during the investigation and Ms. Miller said she would make arrangements for her to report directly to Peter Jianetti, the new Regional Manager, during the investigation.

**Answer to Paragraph 26:**    Wells Fargo admits that Julie Miller contacted Plaintiff at

Plaintiff's home and informed Plaintiff that the Company would commence a formal

investigation into the allegations she made regarding the events that occurred on August

15, 2007 between Plaintiff and Mr. Bechtel.  Wells Fargo also admits that Ms. Miller told

Plaintiff that the Company would make arrangements for Plaintiff to report directly to

8

Peter Jianetti during the investigation. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 27:**    Mrs. Cipra-Valiga also stated that she did not want Jim Linnane involved because of his personal relationship with Mr. Bechtel and his prior inaction to complaints she had made involving Mr. Bechtel.

**Answer to Paragraph 27:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 28:**    On August 22, 2007, Mr. Jianetti met with Mrs. Cipra-Valiga in the Lincoln park office and asked her to tell him what happened and that he was sent to do the investigation.

**Answer to Paragraph 28:**    Wells Fargo admits that Mr. Jianetti met with Plaintiff on August 22, 2007 to inform her that the Company was commencing its investigation into the allegations surrounding her interactions with Mr. Bechtel on August 15, 2007 and that she would report directly to him while the investigation was pending. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 29:**    On August 28, 2007, Mrs. Cipra-Valiga informed Ms. Miller she did not feel comfortable working for or with Mr. Bechtel anymore due to the sexual harassment.

**Answer to Paragraph 29:**    Wells Fargo admits that, on or about August 28, 2007, Plaintiff told Ms. Miller that Plaintiff was uncomfortable reporting to Mr. Bechtel. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 30:**    On August 31, 2007, Ms. Miller informed Mrs. Cipra-Valiga that they completed the investigation into her sex harassment charge, and they had given recommendations to Mr. Jianetti. Ms. Miller stated that they would likely continue to retain Mr. Bechtel and that she and Mr. Jianetti talked about transferring Mrs. Cipra-Valiga's branch to a different Area Manager in Illinois, Mike Axlerood. She indicated that Mr. Jianetti planned to meet with her on Tuesday, September 4, 2007, at 9:00 a.m. Ms. Miller asked Mrs. Cipra-Valiga to think about what they could do to retain her in the likely event that Mr. Bechtel stayed in his position.

**Answer to Paragraph 30:**    Wells Fargo admits that, on August 31, 2007, Ms. Miller advised Mrs. Cipra-Valiga that she had completed the investigation into the Plaintiff's complaint of inappropriate behavior by Mr. Bechtel and that the situation would be addressed in a manner consistent with Wells Fargo's policies and practices. Wells Fargo further admits that Mrs. Cipra-Valiga disclosed to Ms. Miller that Mrs. Cipra-Valiga did not want to work for, and would not work with, Mr. Bechtel and that the two discussed this issue. Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 31:**    On September 4, 2007, Mr. Jianetti met with Mrs. Cipra-Valiga in her office and told her, while pounding on his desk that, "Rick isn't going anywhere. He owns Chicago." He added, "you've caused me a lot of trouble." Then, he asked Mrs. Cipra-Valiga if she would consider leaving her branch and being transferred to the Indiana branch. Mrs. Cipra-Valiga informed him that she did not want to leave her branch. Mr. Jianetti also stated, "we have to keep Rick happy."

**Answer to Paragraph 31:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 32:**    Mr. Jianetti mentioned transferring Mrs. Cipra-Valiga's branch to a different Area Manager in Illinois, Mike Axlerood. Then, he stopped and stated that he needed to discuss with Jim Linnane. He excused Mrs. Cipra-Valiga from her office and called Mr. Linnane.

10

**Answer to Paragraph 32:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.  Answering further, Wells Fargo states that Mr. Jianetti told

Plaintiff that the Company would explore the possibility of realigning the district so that

Plaintiff's branch office would report directly to Mike Axlerood.  The Company later

decided that, due to Mr. Axlerood's short tenure with the Company, such a realignment

would not be practical.

**Paragraph 33:**    After speaking with Mr. Linnane, he informed Mrs. Cipra-Valiga
that the Company's resolution was that they would not be transferring her and her branch to
Mike Axlerood as discussed, but instead, she would still be reporting to Mr. Bechtel; however,
communications would go through him.

**Answer to Paragraph 33:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.  Answering further, Wells Fargo states that Mr. Jianetti told

Plaintiff that the Company would explore the possibility of realigning the district so that

Plaintiff's branch office would report to Mike Axlerood.  The Company later decided

that, due to Mr. Axlerood's short tenure with the Company, such a realignment would not

be practical.

**Paragraph 34:**    During this conversation, Mr. Jianetti informed her that Mr.
Bechtel would get the Rubloff joint venture account, which was an account that she received
from Mr. Bechtel several years ago and built up, because he brought the account in.  Following
their conversation, Mr. Jianetti spoke with Mr. Bechtel.  Three hours later, he called Mrs. Cipra-
Valiga and returned the account to her.

**Answer to Paragraph 34:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

11

**Paragraph 35:**    On September 6, 2007, Mrs. Cipra-Valiga called HR and asked why she would be reporting to Mr. Jianetti instead of Mr. Axlerood as they had discussed. Mrs. Cipra-Valiga stated that she would not continue to work for Mr. Bechtel or his area.

**Answer to Paragraph 35:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 36:**    Ms. Miller admitted that Mrs. Cipra-Valiga was subjected to harassment, but stated that management was not required to transfer the branch to another area.

**Answer to Paragraph 36:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 37:**    Because Wells Fargo's resolution to force her to continue to work to some degree with Mr. Bechtel was unacceptable and unreasonable, Mrs. Cipra-Valiga felt she had no other option but to resign.

**Answer to Paragraph 37:**    Wells Fargo has insufficient information upon which to

form a belief as to the truth of the allegations as stated in this Paragraph of the Complaint

and therefore denies same.

**Paragraph 38:**    On September 7, 2007, Mrs. Cipra-Valiga resigned as a result of constructive discharge based on Wells Fargo's refusal to transfer either Mrs. Bechtel or Mrs. Cipra-Valiga and her branch to another area in Illinois.

**Answer to Paragraph 38:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 39:**    One hour after she resigned, Todd Olson reassigned all Mrs. Cipra-Valiga's offices most lucrative builder accounts to a new hire, Jeff Lapka.

12

**Answer to Paragraph 39:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.


**Paragraph 40:**    Mrs. Cipra-Valiga learned that Mr. Olson was planning to take away Mrs. Cipra-Valiga's offices most lucrative accounts even prior to her resignation.

**Answer to Paragraph 40:**    Wells Fargo has insufficient information upon which to form a belief as to the truth of the allegations as stated in this Paragraph of the Complaint. Answering further, Wells Fargo denies that the Company planned to take away Mrs. Cipra-Valiga's offices most lucrative accounts prior to her resignation.


**Paragraph 41:**    On September 12, 2007, Mrs. Cipra-Valiga sent a letter to Julie Miller stating that she was under extreme emotional duress when she resigned and she would like to withdraw her resignation and asked for Short Term Disability ("STD") benefits and Family Medical Leave Act ("FMLA") claims forms.

**Answer to Paragraph 41:**    Wells Fargo admits the allegations as stated in this Paragraph of the Complaint.


**Paragraph 42:**    On September 13, 2007, Mrs. Cipra-Valiga spoke with Mr. Jianetti on the phone and he advised her that he has accepted her resignation and that he has terminated her in the system and does not understand why he would rescind at this time; therefore, she would not be eligible for STD or FMLA.

**Answer to Paragraph 42:**    Wells Fargo admits that Plaintiff spoke with Mr. Jianetti via telephone on or about September 13, 2007 and that Mr. Jianetti advised Plaintiff that he had accepted her resignation.  Wells Fargo denies the remaining allegations as stated in this Paragraph of the Complaint.

13

**Paragraph 43:**        Anie Hovakimian also reported to human resources that Mr. Bechtel had sexually harassed her.

**Answer to Paragraph 43:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

## COUNT I -- SEX DISCRIMINATION/SEX HARASSMENT

**Paragraph 44:**        Plaintiff realleges paragraphs 1-43 of the General Allegations as paragraphs 1-43 of Count I of this complaint.

**Answer to Paragraph 44:**    Wells Fargo reasserts and incorporates its answers to Paragraphs 1-43 of the Complaint as though fully stated herein.

**Paragraph 45:**        Plaintiff was subjected to unwelcome sexual harassment by her supervisor, Richard Bechtel. He touched her in an unwanted manner and exhibited inappropriate behavior in front of other employees at a company offsite.

**Answer to Paragraph 45:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 46:**        The harassment was based on Plaintiff's sex, a female.

**Answer to Paragraph 46:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 47:**        The harassment unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment.

**Answer to Paragraph 47:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**Paragraph 48:**    Wells Fargo is liable.    Richard Bechtel was Plaintiff's direct supervisor.    Plaintiff informed human resources of the sexual harassment.    The company resolution was unreasonable as Plaintiff would have to continue to work with her harasser, Mr. Bechtel, and he would still have some supervisory authority over her.

**Answer to Paragraph 48:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 49:**    As a direct and proximate result of these actions, Plaintiff has suffered a loss in income and emotional distress.

**Answer to Paragraph 49:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 50:**    In addition, Defendant's conduct was malicious and/or reckless in its disregard for plaintiff's civil rights.

**Answer to Paragraph 50:**    Wells Fargo denies the allegations as stated in this

Paragraph of the Complaint.

### COUNT II – NON-COMPLIANCE WITH THE
### PERSONNEL RECORD REVIEW ACT, 820 ILCS 40/1 *et seq.*

**Paragraph 44:**    Plaintiff realleges paragraphs 1-43 of the General Allegations as paragraphs 1-43 of Count II of this complaint.

**Answer to Paragraph 44:**    Wells Fargo reasserts and incorporates its answers to

Paragraphs 1-43 of the Complaint as though fully stated herein.

**Paragraph 45:**        This Court has jurisdiction pursuant to 820 ILCS 40/12(c) because Plaintiff is employed in Illinois and the personnel record is maintained in Illinois.

**Answer to Paragraph 45:**    Wells Fargo admits the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 46:**        820 ILCS 40/2, explains:

Open Records. Every employer shall, upon an employee's request which the employer may require be in writing on a form supplied by the employer, permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action, except as provided in Section 10. The inspection right encompasses personnel documents in the possession of a person, corporation, partnership, or other association having a contractual agreement with the employer to keep or supply a personnel record. An employee may request all or any part of his or her records, except as provided in Section 10. The employer shall grant at least 2 inspection requests by an employee in a calendar year when requests are made at reasonable intervals, unless otherwise provided in a collective bargaining agreement.    The employer shall provide the employee with the inspection opportunity within 7 working days after the employee makes the request or if the employer can reasonably show that such deadline cannot be met, the employer shall have an additional 7 days to comply. The inspection shall take place at a location reasonably near the employee's place of employment and during normal working hours. The employer may allow the inspection to take place at a time other than working hours or at a place other than where the records are maintained if that time or place would be more convenient for the employee. Nothing in this Act shall be construed as a requirement that an employee be permitted to remove any part of such personnel records or any part of such records from the place on the employer's premises where it is made available for inspection. Each employer shall retain the right to protect his records from loss, damage, or alteration to insure the integrity of the records. If an employee demonstrates that he or she is unable to review his or her personnel record at the employing unit, the employer shall, upon the employee's written request, mail a copy of the requested record to the employee. (Source: P.A. 83-1362.)

**Answer to Paragraph 46:**    Wells Fargo admits the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 47:**    Furthermore, 820 ILCS 40/3 provides:

Copies.  After the review time provided in Section 2, an employee may
obtain a copy of the information or part of the information contained in the
employee's personnel record.    An employer may charge a fee for
providing a copy of such information.  The fee shall be limited to the
actual cost of duplicating the information.  (Source: P.A. 83-1104.)

**Answer to Paragraph 47:**    Wells Fargo admits the allegations as stated in this

Paragraph of the Complaint.

**Paragraph 48:**    On October 10, 2007, Mrs. Cipra-Valiga, through counsel,
requested a copy of her personnel file pursuant to 820 ILCS 40/1 *et seq.*, (copy of request
attached as Exhibit C) and Wells Fargo refused.

**Answer to Paragraph 48:**    Wells Fargo admits that, on or about October 10, 2007,

Plaintiff's counsel requested a copy of Plaintiff's personnel file.  Wells Fargo denies the

remaining allegations as stated in this Paragraph of the Complaint.

**Paragraph 49:**    On November 5, 2007, Mrs. Cipra-Valiga, through counsel, sent a
letter to Wells Fargo again requesting a copy of her personnel file and enclosing an
Authorization for Release and Copying of Employment Records.  Wells Fargo again refused.

**Answer to Paragraph 49:**    Wells Fargo admits that on or about November 5, 2007,

Mrs. Cipra-Valiga, through her counsel, sent a letter to Wells Fargo in which he

requested a copy of Plaintiff's personnel file.    Wells Fargo also admits that an

Authorization for Release and Copying of Employment Records was enclosed therewith.

Wells Fargo denies the remaining allegations as stated in this Paragraph of the

Complaint.

17

**Paragraph 50:**    Thus, efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed.

**Answer to Paragraph 50:**    Wells Fargo denies the allegations as stated in this Paragraph of the Complaint.

**WHEREFORE,** Wells Fargo states that Plaintiff is not entitled to the relief sought and prays that this Honorable Court enter judgment in Wells Fargo's favor and against Plaintiff and orders Plaintiff to pay all attorney fees and costs incurred by Wells Fargo in defending this action.

Dated: June 3, 2008.

Respectfully submitted,

**WELLS FARGO HOME MORTGAGE**

By:    s/*Nigel F. Telman*
    One of its Attorneys

Nigel F. Telman, Esq.
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL 60603
Phone: (312) 853-2106
Fax: (312) 853-7036
Email: ntelman@sidley.com

## CERTIFICATE OF SERVICE

I, Nigel F. Telman, one of the attorneys for Defendant Wells Fargo Home Mortgage, certify that I caused a copy of the attached Answer to Plaintiff's Complaint to be served by e-mail through the Court's ECF system, upon counsel for Plaintiff:

David Bryant, Esq.
Daley, Debofsky & Bryant
55 West Monroe Street
Suite 2440
Chicago, Illinois 60603

this 3rd day of June, 2008.

s/Nigel F. Telman

CHI 4275699v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| THEA L. CIPRA-VALIGA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. | 08 CV 1480 |
| v. | ) | | |
| | ) | | |
| WELLS FARGO HOME MORTGAGE, | ) | Judge James B. Zagel | |
| | ) | | |
| Defendant. | ) | | |

### NOTICE OF FILING

To:    David Bryant, Esq.
      Daley, Debofsky & Bryant
      55 West Monroe Street
      Suite 2440
      Chicago, Illinois 60603

**PLEASE TAKE NOTICE** that on **Tuesday, June 3, 2008,** one of the attorneys for the Defendant filed Wells Fargo Home Mortgage's Answer to Plaintiff's Complaint with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, through the Court's electronic filing system.

s/*Nigel F. Telman*
Nigel F. Telman
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000

*Attorney for Wells Fargo Home Mortgage*

## CERTIFICATE OF SERVICE

I, Nigel F. Telman, one of the attorneys for Defendant Wells Fargo Home Mortgage, certify that I caused a copy of the attached Notice of Filing to be served by e-mail through the Court's ECF system, upon counsel for Plaintiff:

David Bryant, Esq.
Daley, Debofsky & Bryant
55 West Monroe Street
Suite 2440
Chicago, Illinois 60603

this 3rd day of June, 2008.

s/Nigel F. Telman

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of

Case Number: 08 CV 1480

THEA L. CIPRA-VALIGA

v.

WELLS FARGO HOME MORTAGE

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

WELLS FARGO HOME MORTAGE

| NAME (Type or print) |
| --- |
| Nigel F. Telman |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
| --- |
| s/ Nigel F. Telman |

| FIRM |
| --- |
| Sidley Austin LLP |

| STREET ADDRESS |
| --- |
| One South Dearborn Street |

| CITY/STATE/ZIP |
| --- |
| Chicago, IL, 60605 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
| --- | --- |
| 6216939 | (312) 853-2106 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
| --- | --- | --- |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ | NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☑ | NO ☐ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐